**STATE of Tennessee, Appellee,**

v.

**Jack Farris PURKEY, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Dec. 13, 1984.

Permission to Appeal Dismissed by Supreme Court April 1, 1985.

William M. Leech, Jr., Atty. Gen., Wayne E. Uhl, Asst. Atty. Gen., Nashville, Charles Hawk, Dist. Atty. Gen., Kingston, for appellee.

Thomas D. Shelburne, Rogersville, for appellant.

## OPINION

O'BRIEN, Judge.

Defendant was convicted of embezzlement by a jury in the Hawkins County Criminal Court and sentenced to serve not less than three (3) years nor more than three (3) years in the penitentiary, and to pay a fine of Fifty Thousand Eight Hundred Eighteen Dollars and forty-eight cents ($50,818.48), the amount embezzled. He was also found guilty on two counts of failure, as a county official, to deposit county funds in accordance with T.C.A. § 5-8-207. He was sentenced to serve thirty days in jail on each of the two misdemeanor counts concurrently with the penitentiary sentence.

The sufficiency of the conviction evidence has not been challenged, however, a brief summary of the facts will be beneficial to place the matter in its proper perspective.

Defendant was the Hawkins County Circuit Court Clerk. On August 31, 1981 State auditors made a routine check of the Clerk's books. The procedure employed was to check the latest receipt issued for monies received against the most recent bank deposit of public funds to the credit of the Clerk's official account. This was followed by an actual count of the remaining cash on hand in the office on that date, and finally by an annual audit which was begun on May 17, 1982. While this audit was in progress irregularities were disclosed which prompted a further investigation.

Statutory accounting procedures require the issuance of receipts for any payment made into the Clerk's office, and for all funds received to be deposited within three days into an official account. The audit revealed that receipts had not been issued for certain checks which had been deposited in the bank. The auditors concluded that some cash payments had been received and entries made in the receipt books, but the cash received was not deposited in the bank. For the period between September 1, 1980 and August 31, 1981, shortages totaled about $31,000. By May 17, 1982 the discrepancy had increased to $50,-818.48.

The auditors requested defendant to produce all of the cash on hand. Defendant informed them that all of the money was not there. That he had a large farming operation and would sometimes write personal checks to the cash box and replace the money at the end of the month. He requested time to compute the amount of the shortage so it could be augmented by his personal check to be included in the auditor's computation. A few days later defendant produced cash accompanied by his personal check in the amount of $23,500 to make up the sum of $51,013 which had been his computation of the shortage.

The District Attorney General became aware of the apparent shortage of funds while the audit was in progress. During the next ensuing weeks he had two or three short conversations with defendant about the situation. When the audit was complete and the approximate amount of shortage was ascertained he set up an informal conference with the County Execu-

tive and two of the judges whose courts were served by the clerk's office. Defendant was requested to attend. When notified, defendant suggested meeting first with the Attorney General privately to discuss the matter. The called meeting was conducted for the general purpose of informing the judges of the contents of the audit report and to talk over the facts of the situation. There was no official action discussed, or taken, at the meeting which lasted about ten or fifteen minutes.

It is defendant's first insistence that he was entitled to immunity from prosecution under the provisions of T.C.A. § 8–47–107. Chapter 47 of Title 8 of the Code pertains to the removal of public officers from office who shall knowingly or willfully misconduct themselves in office, or who shall knowingly or willfully neglect to perform any duty enjoined upon them by any of the laws of the State, etc. Among other things it provides for investigation, institution of proceedings against defalcating officers, and the procedure for their ouster from office in appropriate circumstances. The various sections generally provide that when the circumstances warrant it is the duty of the State Attorney General, the District Attorneys General, or County or City Attorneys, within their respective jurisdictions, to initiate an investigation, and upon a finding of reasonable cause, institute proceedings in court for the ouster of an offending officer from office. The statutes invest the investigating officers with subpoena power, in the course of their investigation, for witnesses whom they believe have any knowledge of the subject matter of the investigation. Witnesses called to appear before the investigating officer shall be sworn to testify truly on all questions touching the matter under investigation. T.C.A. § 8–47–107 specifically provides for immunity from prosecution:

"No person shall be excused from testifying before said attorney general, district attorney general, county attorney, or city attorney, at such investigation, or in any investigation, or be excused from testifying in any proceeding brought in any court of competent jurisdiction, under the provisions of this chapter, on the ground that his testimony may incriminate him; but no person shall be prosecuted or punished on account of any transaction, matter, or thing concerning which he shall be compelled to testify, nor shall such testimony be used against him in prosecutions for any crime or misdemeanor under the laws of this state."

Defendant argues that he was compelled to appear at the meeting with the District Attorney and the judges and was interrogated in a coercive atmosphere about the matter for which he now stands convicted. That he was not advised of his rights at that meeting even though the investigation had focused on him as a suspect and he is entitled to the immunity granted by the statute.

█ A complete pre-trial hearing was held on this issue. The trial court held the meeting between defendant, the District Attorney General and the judges did not fall within the scope of the statute, and that ouster was not discussed. Criminal prosecution was not discussed. He held that it was an informal process, not held under authority of law, no one was placed under oath or compelled to testify and that T.C.A. § 8–47–107 did not bar prosecution. We concur with the trial court. From the record it is clear defendant was not compelled to attend the meeting and did not testify. The issue is without merit.

Defendant charges the trial court erred in allowing the supervisor of the auditors who conducted the audit of the books to testify to his conclusions based upon the audit performed by others under his supervision. It is argued that though the witness supervised the work he did not perform the audit, and was allowed to testify on his conclusions that unreceipted funds were used to replace funds previously embezzled. It is also contended that the witness was not qualified as an expert and the opinions expressed by him were beyond his expertise and went to the ultimate issue of the prosecution.

The record does not bear out the contentions made by the defendant. Larry Bailey testified he was a supervisor in the State Comptroller's Office, Division of County Audit, and had assigned a particular auditor to do the cash count in this case according to procedures he had established. The assigned auditor ran into some peculiar problems and Mr. Bailey became personally involved, examining all of the receipts, deposits, and monetary transactions of the Clerk's office. It is plain that Mr. Bailey's testimony was based on his own observations and not that of anyone else. Generally a lay witness may testify regarding facts about which he has firsthand knowledge. See *State v. Wiseman,* 643 S.W.2d 354, 364 (Tenn.Cr.App.1982). An expert's opinion is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact, so long as it is helpful to the court. *Lawrence County Bank v. Riddle,* 621 S.W.2d 735, 737 (Tenn. 1981). Mr. Bailey was fully qualified as an expert in his field. The issue is overruled.

Defendant says the court erred in admitting into evidence certain charts which were prepared by the State's witness, William McBee. This witness testified he was a special agent for the Tennessee Bureau of Investigation with a degree in accounting. He was an auditor for the State of Tennessee for three years, and had various other related experience over a period of six or seven years. He had been involved in the investigation of the Circuit Court Clerk's Office of Hawkins County, and had made an analysis of certain bank accounts of defendant and his wife. He produced copies of the bank records of the accounts which included microfilm copies of bank statements for the period of time in question, deposit slips and supportive information reflecting the deposits shown on the statement. These records were filed and marked as exhibits in the case. The witness explained the nature of his investigation and his analysis of the accounts and produced charts and graphs which he had prepared to assist in the explanation of his analysis of the accounts. The charts were filed in evidence and utilized by him in his testimony. Defendant argues there was no proper foundation laid for the introduction of the charts which stated conclusions rather than being illustrative of the witness' testimony.

This Court recently reviewed an almost identical situation in *State v. Wiseman,* supra, in which an accountant used a chart to summarize business records in an embezzlement case. The Court stated:

"When the documents introduced in evidence are voluminous and of such a character as to render it difficult for the jury to comprehend material facts without abstracts thereof, it is within the discretion of the trial judge to admit the abstracts provided they are based on facts in evidence, verified by the testimony of the preparer, and provided the adverse party is allowed to examine them to test their correctness by cross-examination." (643 S.W.2d at 365).

These conditions were met in the instant case. The witness verified the information on the charts and the bank statements on which the charts were based were introduced into evidence. Defense counsel had adequate opportunity to test the correctness of the charts by cross-examination of the witness. The trial judge did not abuse his discretion in allowing the State to use the charts.

Defendant propounds the proposition that T.C.A. § 5–8–209, the penalty statute for failure of public officials to maintain an official bank account, violates Article 6, Sec. 14 of the Tennessee Constitution because it provides for a fine of not less than $50 nor more than $200, or by imprisonment, in the discretion of the court. Article 6, Sec. 14 of the Constitution provides that no fine shall be levied in excess of $50 unless it shall be assessed by a jury. Defendant says the statute is unconstitutional because it allows the court to fix a fine contrary to the quoted constitutional provision.

In *State v. White,* 177 S.W. 478, 132 Tenn. 203, 206 (1915), in construing a similar statute it was held that the word

"court" as used in the statute, is not a designation of the presiding judge, but the term is used in a collective sense, indicating the tribunal before which the conviction should be had, and includes both court and jury. Moreover, the limitations upon the power of the trial court imposed by Article 6, Sec. 14 of the Constitution may be waived by an accused. *State v. Durso*, 645 S.W.2d 753, 759 (Tenn.1983). Notwithstanding all of the foregoing, a person has no standing to contest the constitutionality of a statutory provision unless the provisions he claims to be deficient has been used to deprive him of his rights. *State v. Vanzant*, 659 S.W.2d 816 (Tenn.Cr.App. 1983); *State v. Pritchett*, 621 S.W.2d 127 (Tenn.1981). There was no fine imposed in this case upon defendant. Moreover we note that were we to find the statute unconstitutional, it would affect only the lesser judgments for failure to deposit funds, and not defendant's conviction for embezzlement.

Defendant avers he was a proper candidate for probation under statutory criteria and case law. He also says the trial court erred in denying probation in disregard of a favorable pre-sentence report; by basing his decision on deterrence as a factor; and in denying probation when to grant the same would benefit both the defendant and the public.

In the order denying probation the trial court dwelt extensively on the numerous factors militating in favor of defendant's probation. He also made a finding that the plan to embezzle funds from the county was a continuing scheme executed over the course of an extended period of time. Substantial sums of money were taken and the records were artfully juggled so that all accounts were balanced. Except for the discovery of discrepancies in a limited audit the loss of public funds would have never been discovered. He found that guilt was evident and that defendant maliciously impugned the integrity of his employees at trial in an attempt to sacrifice their reputation for his personal advantage. He found defendant unre-

morseful and unrepentant. He held that the public's confidence in public servants is imperative in a free society and that public corruption has been rampant in that area in recent months involving sheriffs, trustees, assistant district attorneys general, and other public officers. He held that the public right to responsible public officials must be vindicated and that criminal misconduct must be punished to deter those similarly situated, and to renew the faith and confidence of the citizens in their officials and in the criminal justice system. Because of the continuing nature of the malevolent acts, the nature and circumstances of the offense, the enormity of the crime, the great need for deterrence, the vindication of public wrong, that probation should be denied.

An appellate court is not authorized to weigh evidence or substitute its judgment for that of a trial judge in reviewing an order granting or denying a petition for a suspended sentence or probation. See *State v. Hollingsworth*, 647 S.W.2d 937 (Tenn.1983); *State v. Grear*, 568 S.W.2d 285 (Tenn.1978), cert denied, 439 U.S. 1077, 99 S.Ct. 854, 59 L.Ed.2d 45 (1979). The decision of the trial judge in ruling on a petition for suspended sentence or probation is binding on the appellate courts, unless the decision is capricious, arbitrary, or indicates a palpable abuse of discretion. *State v. Hollingsworth*, supra. In *Grear*, supra, the Supreme Court pointed out that:

"... in order for the reviewing appellate court to be warranted in finding an abuse of discretion by the trial court in these cases it must demonstrate that the record contains no substantial evidence to support the conclusion of the trial court that the defendant is not entitled to probation or suspended sentence, giving due consideration to the criteria set out in the statute and decisions of this Court as appropriate for determining suitability for probation."

In the case under consideration there is evidence pro and con on the issue of suspension of sentence and probation.

The trial judge elected to require the defendant to serve his sentence and denied probation. His decision is binding on the appellate courts. See *State v. Neeley,* 678 S.W.2d 48 (Tenn.1984); *State v. Pierson,* 678 S.W.2d 905 (Tenn.1984).

The judgment of the trial court is affirmed.

BYERS, J., and WILLIAM H. WILLIAMS, Special Judge, concur.