IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 23, 2010 Session

## STATE OF TENNESSEE v. MARK PATTON

**Direct Appeal from the Criminal Court for Roane County**
**No. 14137      Jon Kerry Blackwood, Judge**

---

**No. E2009-01724-CCA-R9-CD - Filed January 24, 2011**

---

In this interlocutory appeal, the appellant, Mark Patton, appeals the Roane County Criminal Court's denial of his motion to dismiss a three-count indictment against him. The appellant claims that he is immune from prosecution pursuant to Tennessee Code Annotated section 8-47-107 because the State compelled him to testify about matters related to the indictment at a proceeding to oust him as Roane County Constable. Upon review of the record and the parties' briefs, we reverse the order of the trial court and dismiss the indictment.

**Tenn. R. App. P. 9; Order of the Criminal Court is Reversed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

F. Chris Cawood, Kingston, Tennessee, for the Appellant, Mark Patton.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; and Russell Johnson, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

We glean the following facts from the sparse record before us: The appellant was elected Constable for the 6th District of Roane County and began serving that position in September 2006. In January 2009, the District Attorney General for the 9th Judicial District and the Roane County Attorney filed an ouster complaint against him, alleging multiple incidents of misconduct. One of the incidents allegedly occurred in November 2008 when

the appellant "assaulted the daughter and grandchildren of the Roane County Sheriff by willfully and wantonly using his vehicle as a weapon against said woman and children." In February 2009, the appellant was indicted for two counts of reckless endangerment and one count of official misconduct. The first count of reckless endangerment resulted from the appellant allegedly endangering the lives of Tony and Alice Tate on or about February 14, 2009. The second count of reckless endangerment resulted from the appellant's alleged actions against the sheriff's daughter, Rebecca Turpin, and her children on or about November 26, 2008. Count three alleged that the appellant committed official misconduct between June 2007 and "up through" February 14, 2009.

In March 2009, the district attorney general and the Roane County Attorney amended the original complaint to include the three-count indictment as additional grounds for the appellant's ouster. The amended complaint also revealed information about the February 2009 incident involving the Tates. According to the amended complaint, the appellant used his vehicle aggressively in an attempt to run their vehicle off the road. When the Tates stopped their vehicle, the appellant berated them, made them fear for their lives, and "made it clear that he was angry at the Tates and that he knew they were related to the Kingston Police Chief, with whom he also expressed a sincere dislike."

An ouster proceeding was held on June 29 and 30, 2009. Near the close of the plaintiffs' case, the Roane County Attorney called the appellant to testify. The appellant testified, in pertinent part, as follows:

> Q. Mr. Patton, you have listened to all the witnesses that have testified so far in this case?
>
> A. Yes, sir, I have.
>
> Q. Have you heard the numerous witnesses that said they feel that you threatened them?
>
> A. Yes, sir, I have.
>
> Q. And they said they feared for their safety because of your conduct exhibited towards them?
>
> A. I have listened to the testimony, I sure have. I'm not saying I agree with it, but I have listened to it, yes, sir.
>
> Q. Have you heard the testimony of Chief Washam's

-2-

mother-in-law that testified you tried to run her off the road?

A.     Yes, sir, I sure have.

[Defense counsel]:  Just a second, Mr. Patton.

We want to object to that, Your Honor.  We object to that based upon the fact that that particular part of this case is included in a criminal indictment.  I don't think my client should be compelled to testify about things that have not been tried yet in a criminal indictment.

As to the other issues, we don't care for him to testify.

THE COURT:  Are you referring to one of the exhibits that have been introduced?

[Defense counsel]:  Yes, Your Honor, the indictment.  They were asking about Mrs. Tate I believe.

THE COURT:  Let me see the indictment.

[The State]:  Your Honor, that would be Exhibit 12, which also includes official misconduct regarding everything we have talked about here today.

THE COURT:  (Reviewing document.)  All right.  Are you objecting and instructing your client not to answer questions concerning incidences that are involved in the criminal indictment?

[Defense counsel]:  No, Your Honor.  I'm objecting to that, but we are not objecting on the grounds of the Fifth Amendment because that would imply that he's trying to protect from saying something that would make him guilty.  I'm just saying he should not be compelled to testify because it is a matter of an ongoing criminal indictment, but not the Fifth Amendment.

I will not instruct him not to answer.  I just want the Court to rule whether he should under the circumstances or not.

THE COURT:  What is your response?

-3-

[The State]: Your Honor, that would be his only alternative to testifying would be taking the Fifth Amendment. We have called him as an adverse witness and we want to ask him about the proof that's been put on. There is nothing that I am aware of that would prevent us from doing that just because there is an indictment.

I would point out that there is one count of the indictment, if you go with [defense counsel's] logic, that would virtually rule out him testifying on anything we have talked about today.

THE COURT: As far as the objection is concerned, the objection is overruled.

[Defense counsel]: Thank you, Your Honor.

The State resumed questioning the appellant, in pertinent part, as follows:

Q.      So, Mr. Patton, did you hear the testimony from the chief of police's mother-in-law when she said you ran her off the road?

A.      Yes, sir, I did.

Q.      Did you hear the testimony of the sheriff's daughter where she accused you of the same thing?

A.      Yes, sir, I did. Never seen either one of them before until I stepped foot in this courtroom today.

Q.      Did you hear the testimony --

A.      Except for Ms. Tate.

. . . .

Q.      I asked you earlier if you heard all of these witnesses who said they thought you had threatened them.

A.      Yes, sir, I did hear all the witnesses say that they felt --

-4-

> they said they felt threatened. Not that I had threatened
> them, but they felt threatened. Yes, sir, I did hear that
> testimony.
>
> Q. And they said because of your conduct they feared for
> their safety, did you hear that?
>
> A. I did hear that.
>
> Q. Are those people telling the truth?
>
> A. No, sir, they are not.

At the conclusion of the of the ouster hearing, the appellant was removed from his position as Roane County Constable.

The day after the hearing, the appellant filed a motion to dismiss the three-count indictment. The appellant argued that because he was compelled to testify at his ouster proceeding regarding matters related to the indictment, he was immune from prosecution or punishment pursuant to Tennessee Code Annotated section 8-47-107, which provides as follows:

> No person shall be excused from testifying before the
> attorney general and reporter, district attorney general, county
> attorney, or city attorney, at such investigation, or in any
> investigation, or be excused from testifying in any proceeding
> brought in any court of competent jurisdiction, under the
> provisions of this chapter, on the ground that such person's
> testimony may incriminate such person; but no person shall be
> prosecuted or punished on account of any transaction, matter, or
> thing concerning which such person shall be compelled to
> testify, nor shall such testimony be used against such person in
> prosecutions for any crime or misdemeanor under the laws of
> this state.

In ruling on the motion, the trial court stated, "On first blush it seems to me in this case that . . . this statute would preclude the prosecution of anyone who was compelled to testify in an ouster suit regarding conduct -- and I'm sure it is -- conduct for which he was indicted." However, the court determined that the appellant's answers were not incriminating and that "[t]he privilege here that's being asserted is to protect one's self from self incrimination for

further criminal conduct." Therefore, the court reasoned that granting the appellant's motion was not warranted. Nevertheless, the trial court ordered that none of the appellant's testimony be used at his criminal trial, "not even for the purposes of impeachment" against self-incrimination. Subsequently, the trial court granted the appellant's request for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.

## II. Analysis

In this issue of first impression, the appellant maintains that he is immune from prosecution under Tennessee Code Annotated section 8-47-107.[1] The State argues that the trial court correctly denied the motion to dismiss the indictment because the legislature did not intend for the statute "to result in such blanket immunity" and that, in any event, the appellant was not compelled to testify because defense counsel announced at the beginning of the ouster proceeding that the appellant was going to testify. We are unpersuaded by either of the State's arguments and conclude that the indictment must be dismissed.

When reviewing issues of statutory construction, we conduct a de novo review of the trial court's rulings without any presumption of correctness. See Carter v. Bell, 279 S.W.3d 560, 564 (Tenn. 2009). "When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use . . . without reference to the broader statutory intent, legislative history, or other sources." Id. Our goal is to "ascertain and give effect to the legislative intent without broadening the statute beyond its intended scope." Id. We should also "adopt a construction which will sustain a statute and avoid constitutional conflict." State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993). Finally, we "must presume that the General Assembly is aware of prior enactments and decisions of the courts when enacting legislation." Carter, 279 S.W.3d at 564.

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Similarly, article I, section 9 states that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Thus, a defendant cannot be compelled to give self-incriminating testimony without a grant of immunity. See Colley v. State, 169 S.W.2d 848, 849-50 (Tenn. 1943).

---

[1] We note that only one other case has addressed Tennessee Code Annotated section 8-47-107. In State v. Purkey, 689 S.W.2d 196 (Tenn. Crim. App. 1984), this court held that an informal investigation in which the witness is not placed under oath does not qualify as an investigation or proceeding sufficient to cloak the witness with immunity. Purkey did not address the specific issue raised by the appellant and, therefore, is not helpful in our analysis.

In 1892, the United States Supreme Court held that immunity statutes must protect against the direct use of the compelled testimony and "prevent the use of [the] testimony to search out other testimony to be used." Counselman v. Hitchcock, 142 U.S. 547, 562 (1892). As the Court explained, "[No] statute which leaves the party or witness subject to prosecution, after he answers the criminating question put to him, can have the effect of supplanting the privilege conferred by the constitution." Id. at 585. The Court stated that in order for an immunity statute to be valid, it "must afford absolute immunity against future prosecution for the offence to which the question relates." Id. at 586. Thus, the Court strongly suggested that immunity statutes provide witnesses with what is known as "transactional immunity" in order to be coextensive with the Fifth Amendment.

Lawmakers responded to Counselman to ensure that various immunity statutes were constitutionally permissible. For example, "the Compulsory Testimony Act of 1893, was drafted specifically to meet the broad language in Counselman" and provided that "'no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise.'" Kastigar v. United States, 406 U.S. 441, 451 (1972) (quoting Act of Feb. 11, 1893, 27 Stat. 444). The language in the Act became the "basic form" for other transactional immunity statutes. Id. at 452; see also Hale v. Henkel, 201 U.S. 43, 67 (1906) (noting that a 1903 statute with nearly identical language was designed to satisfy the requirements of Counselman).

Turning to the Tennessee statute at issue, in 1915, our legislature chose almost identical language when it enacted Tennessee Code Annotated section 8-47-107. In 1972, the United States Supreme Court in Kastigar abrogated Counselman, noting that a grant of immunity must afford protection commensurate with that afforded by the Fifth Amendment but does not have to be broader and stating that the privilege against self-incrimination "has never been construed to mean that one who invokes it cannot subsequently be prosecuted." Kastigar, 406 U.S. at 453. Despite the Court's holding that the Fifth Amendment does not require transactional immunity, our legislature did not amend the immunity statute at issue to account for Kastigar. In our view, the language in Tennessee Code Annotated section 8-47-107 is clear and unambiguous and grants transactional immunity, protecting witnesses from any subsequent prosecution for offenses related to the subject matter upon which he or she is compelled to testify. While our holding means that the statute provides more protection than the Fifth Amendment requires, it comports with the prevailing wisdom that existed at the time our legislature enacted the statute.

The State argues that granting transactional immunity to defendants will result in the State's "untenable position of having the duty to initiate ouster proceedings while abandoning its duty to criminally prosecute." We disagree. In its argument, the State cites

Tennessee Code Annotated section 8-47-119(a), which provides that ouster proceedings "shall have precedence over civil and criminal actions, and shall be tried at the first term after the filing of the complaint or petition." The State contends that, therefore, the criminal action must take place after the ouster proceeding. However, Tennessee Code Annotated section 8-47-119(a) and its appeal-related equivalent, Tennessee Code Annotated section 8-47-125, instruct the trial court as to the placement of an ouster proceeding within the court's docket. See State ex rel. Timothy v. Howse, 183 S.W. 510, 512 (Tenn. 1916). They are not commands on the prosecution.

Next, we must determine whether the appellant was compelled to testify. Cases involving other immunity provisions, such as Tennessee Rule of Criminal Procedure 6(j)(7), which provides immunity to grand jury witnesses, have typically involved a witness that was compelled to testify by virtue of a subpoena. See, e.g., State v. McCollum, 904 S.W.2d 114 (Tenn. 1995). However, an unsubpoenaed witness can be compelled to testify by judicial order. Id. at 116. Generally, witnesses who volunteer to testify are not compelled, and, therefore, are not entitled to immunity. See, e.g., Colley, at 849.

In this case, defense counsel objected to the appellant's testifying about matters that were the subject of the criminal case. The trial court overruled the objection, and the appellant was required to answer questions about events related to the three-count indictment. Thus, he was compelled to testify. Although the State contends that the trial court properly denied the motion because the appellant "did not provide any specific testimony concerning the case" and the State "did not learn anything new from [his] testimony," neither point matters. Pursuant to the plain language of the statute and the legislative intent, the appellant is still entitled to transactional immunity. See also McCollum, 904 S.W.2d at 116 (recognizing that "testimony given might be utterly insufficient to form the basis of a prosecution against the witness, nevertheless if it related to the offense later charged against him, he would be within the protection of the statute") (quoting State v. Stone, 161 Tenn. 74, 29 S.W.2d 250, 251 (Tenn. 1930)). Therefore, the trial court erred by denying the appellant's motion, and the indictment must be dismissed.

### III.  Conclusion

Based upon the record and the parties' briefs, we reverse the trial court's order denying the appellant's motion to dismiss and dismiss all three counts of the indictment.

_____
NORMA McGEE OGLE, JUDGE