IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 12, 2015

**STATE OF TENNESSEE v. TAMMY MARIE HARBISON**

**Appeal from the Circuit Court for Lawrence County**
**No. 32633     Stella L. Hargrove, Judge**

---

**No. M2015-01059-CCA-R3-CD – Filed February 12, 2016**

---

The Defendant-Appellant, Tammy Marie Harbison, entered an open guilty plea to one count of theft of property valued at more than $1,000 but less than $10,000 in the Lawrence County Circuit Court.  As a Range I, standard offender, she received a three-year sentence, which was suspended following service of six months in incarceration.  On appeal, the Defendant-Appellant contends that the trial court abused its discretion in denying her request for full probation.  Upon review, we reverse the judgment of the trial court and remand for entry of a judgment sentencing the Defendant-Appellant to serve her three-year sentence on supervised probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

William Joshua Morrow, Lawrenceburg, Tennessee, for the Defendant-Appellant, Tammy Marie Harbison.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Christi Leigh Thompson, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

At the May 11, 2015 sentencing hearing, the State introduced a copy of the presentence report, which showed that the Defendant-Appellant had been previously charged with passing worthless checks.[1]   The charge was dismissed upon payment of

---

[1] Although the transcript from the Defendant-Appellant's guilty plea hearing was not included in the appellate record, the record is adequate for our review.  See State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012) ("[W]hen a record does not include a transcript of the hearing on a guilty plea, the Court of

costs and restitution and the Defendant-Appellant had no other criminal history.

Ruth Keener, the eighty-two-year-old victim in this case, testified that she hired the Defendant-Appellant to help with housework in the fall of 2013. The Defendant-Appellant had been working for Keener for approximately ten months when Keener noticed that one of her rings was missing and reported it to the police. Keener had purchased the ring in 2007 for $1,300. A few weeks later, Keener saw a Facebook post listing the ring for sale in a neighboring county and called her son, who notified the police. When asked if she trusted the Defendant-Appellant while she employed her, Keener stated, "[y]es, I did. She was very friendly, and it was really a shock to me when this happened." Keener testified that although the ring was returned to her . . . she "[doesn't] trust anybody anymore[.]" On cross-examination, Keener acknowledged that the Defendant-Appellant had sent her an email after the incident requesting forgiveness for stealing the ring.

The Defendant-Appellant admitted to taking the ring from Ms. Keener and posting a Facebook ad in an attempt to sell it. She confirmed that she had been working for the victim for approximately ten months at the time she took the ring. She further testified that she had no prior convictions and had never been on probation. She recalled that she was contacted by an undercover officer the day after posting the ad and agreed to sell the ring to him for $200. When she met the undercover officer, she confirmed that she had the ring and was placed under arrest. She told the officer that she had taken the ring approximately three weeks before she posted it for sale. At the hearing, the Defendant-Appellant claimed that she "love[d the victim] to death," and when asked what prompted her to steal the ring, she stated, "I have no idea, it was stupid. It's just something I shouldn't have done."

Carmen Brooks testified that she had been friends with the Defendant-Appellant for twenty years. In that time, Brooks had undergone four back surgeries and relied heavily on the Defendant-Appellant to assist with cooking, cleaning, and transporting her children to and from school. Brooks testified that she had never noticed anything missing in her home after the Defendant-Appellant had been there and volunteered to help transport the Defendant-Appellant to meet her probation officer.

Larry Chapman, the Defendant-Appellant's nephew, testified that the Defendant-Appellant was responsible for caring for her father, who was being treated for cancer. Chapman, who had also previously been treated for cancer, further testified that the Defendant-Appellant had frequently accompanied him to treatment as well. He stated

---

Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review[.]").

that many members of his family relied on the Defendant-Appellant similarly when they were in poor health. Chapman also volunteered to help transport the Defendant-Appellant to probation appointments if necessary. At the conclusion of the hearing, defense counsel asked the court to allow the Defendant-Appellant to serve her sentence on probation. In support, defense counsel noted that this offense was a one-time occurrence on an otherwise unblemished record.

> This isn't something like the embezzlement cases we have where it's $5 one day, and $10 the next day, and $15 the next day. This is one lady who on one day did something that she has regretted from that moment forward. And she's never been on probation . . . [s]he's an excellent candidate for probation.

The trial court denied the Defendant-Appellant's request for probation and sentenced her to three years in the Tennessee Department of Correction, with six months to be served in the county jail and the remainder on supervised probation. The trial court found that a sentence of incarceration was necessary to avoid unduly depreciating the seriousness of the offense and to provide an effective deterrent to those likely to commit similar offenses. Although the Defendant-Appellant consistently expressed remorse for her actions throughout the hearing, the trial court discredited those claims, stating "[i]f there's any remorse, it's because she got caught. She thought [the sale of the ring] was a done deal." The trial court also took issue with the Defendant-Appellant's demeanor during the sentencing proceeding:

> And [Defense Counsel], th[e]se are my words – "no harm no foul," because that's how [the Defendant-Appellant] walked in here to get probation[.] "It's no big deal. I stole it. She got it back. It's no big deal." That was what the court gleaned from her demeanor. I still feel that way [about the Defendant-Appellant's demeanor] at the end of this hearing – "no harm and no foul. I'm going to get probation."

This timely appeal followed.

## ANALYSIS

On appeal, the sole issue presented for our review is whether the trial court abused its discretion in denying the Defendant-Appellant's request for full probation and imposing a sentence of split-confinement. The Defendant-Appellant contends that (1) "there is absolutely no proof in the record that confinement would have a deterring effect on similar crimes in the community," and (2) that "there is no basis in the record to support the trial court's refusal to order full probation on the grounds that to do so would

depreciate the seriousness of the offense." The State responds that the trial court made adequate findings to support its ruling, and that even if the trial court's articulation of those findings was inadequate, the record as a whole supports the split-confinement sentence. Upon our review, we agree with the Defendant-Appellant that there is no substantial evidence in the record that would justify the denial of probation in this case.

"[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including questions related to probation or any other alternative sentence." Caudle, 388 S.W.3d at 278-79. Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Here, the Defendant-Appellant pleaded guilty to a Class D felony as a standard offender. Accordingly, she was considered a favorable candidate for alternative sentencing. However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D). A trial court should consider the following when determining whether there is "evidence to the contrary" indicating that an individual should not receive alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

We note that the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. See id. (citing T.C.A. § 40-35-303(b)).

A defendant is eligible for probation if the actual sentence imposed is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. T.C.A. § 40-35-303(a). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b). In addition, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b), Sentencing Comm'n Cmts. Rather, the defendant must demonstrate that probation would "'serve the ends of justice and the best interest of both the public and the defendant.'" State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting State v. Housewright, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). The principles of sentencing also require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. § 40-35-103(2), (4). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5). Moreover, our supreme court has held that truthfulness is a factor which the court may consider in deciding whether to grant or deny probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983) (citing State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981)).

Here, the Defendant-Appellant entered an open guilty plea to one count of theft of property valued at more than $1,000 but less than $10,000, a Class D felony. See T.C.A. §§ 39-14-103, -105(a)(3). Therefore, she was subject to a sentencing range of two to four years. Id. § 40-35-112(a)(4). The Defendant-Appellant received a mid-range sentence of three years, split-confinement, with the first six months to be served in incarceration and the balance on supervised probation. The trial court rejected the Defendant-Appellant's request for full probation after determining that full probation would unduly depreciate the seriousness of the offense and that incarceration was particularly well suited to serve as an effective deterrent. See T.C.A. § 40-35-103(1)(B).

In this case, the trial court failed to articulate the specific facts upon which it determined that incarceration was necessary to provide an effective deterrent. Instead the trial court stated simply, "I think [confinement] would [provide an effective deterrent]. I

think confinement is particularly suited to keep people from stealing from others in the privacy of their own home [II: 61]." Despite the wide discretion afforded to trial courts in sentencing decisions, the trial court has an affirmative duty to state on the record, either orally or in writing, its findings of fact and reasons for imposing a specific sentence on the record to facilitate appellate review. See T.C.A. §§ 40-35-209(c), -210(e); see also State v. Robert Joseph Harr, No. W2011-02735-CCA-R3-CD, 2013 WL 5422801, at *10 (Tenn. Crim. App. Sept. 27, 2013), perm. app. denied (Tenn. Feb. 12, 2014) (Tipton, P.J., concurring and dissenting) ("I do not believe that our supreme court intended Bise and Caudle to do away, in wholesale fashion, with Tennessee jurisprudence developed over the last thirty years upon which the Sentencing Act is based and in which the Act's provisions are interpreted."). The statements of the trial court espousing her personal belief about the need for deterrence are not evidence, and no proof was introduced at the sentencing hearing related to deterrence. See State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994); see also State v. Davis, 940 S.W.2d 558, 560 (Tenn. 1997) ("[A] finding of deterrence cannot be conclusory only but must be supported by proof.") (citing and quoting Ashby, 823 S.W.2d at 170); State v. Nunley, 22 S.W.3d 282, 286 (Tenn. Crim. App. 1999) (holding that in order to use deterrence as a justification for confinement, evidence must be presented indicating some special need for deterrence.); State v. Cheryl Bass, No. M2006-02563-CCA-R3-CD, 2008 WL 544586, at *22 (Tenn. Crim. App. Feb. 28, 2008), perm. app. denied (Tenn. Oct. 6, 2008) (holding that it was error for the trial court to deny alternative sentencing based on the need for deterrence where the trial court's statements on the need for deterrence were merely conclusory); State v. Shannon Ann Maness and Daryl Wayne Maness, No. W2012-02655-CCA-R3-CD, 2014 WL 350429, at *6 (Tenn. Crim. App. 2014), perm. app. denied (Tenn. July 15, 2014) (reversing the trial court's denial of alternative sentencing based on deterrence because a need for deterrence was not supported by the record).

Furthermore, the trial court failed to articulate the specific facts upon which she based her determination that incarceration was necessary to avoid depreciating the severity of the offense. Instead, when discussing this factor, the court stated simply, "the court finds that [a probationary sentence] would [depreciate the severity of the offense]." Accordingly, we must examine the record to determine if there is any substantial evidence in the record supporting the trial court's determination. State v. King, 432 S.W.3d 316, 327 (Tenn. 2014) (citing State v. Curry, 988 S.W.2d 153, 158 (Tenn. 1999)). Based on the following authority and analysis, we do not.

The Tennessee Supreme Court held in State v. Travis that if the seriousness of the offense forms the basis for the denial of probation it must be clear that "the criminal act, as committed, would be described as especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree; and it would have to be clear that, therefore, the nature of the offense, as committed, outweighed all

-6-

other factors [favoring] a grant of probation."[2] 622 S.W.2d 529, 534 (Tenn. 1981). Importantly, Travis was also decided under an abuse of discretion standard, which we now apply to all trial court decisions regarding manner of service. Robert Joseph Harr, 2013 WL 5422801 at *10 (Tipton, P.J., concurring and dissenting).

In State v. Trotter, a theft case, the Tennessee Supreme applied this heightened standard and determined that the circumstances of the offense alone were sufficiently egregious to justify the denial of probation because the defendants stole "nearly half a million dollars," in a scheme which persisted over the course of two years, from one of the defendants' employers. 201 S.W.3d 651, 654 (Tenn. 2006). Other theft cases in Tennessee that have met this standard involved similarly large amounts of money, and usually occurred over a protracted period of time. See, e.g., State v. Chestnut, 643 S.W.2d 343 (Tenn. Crim. App. 1982) (circumstances of the offense met heightened standard where the defendant embezzled approximately $39,000 from her employer over the course of ten months and 157 separate transactions); State v. Purkey, 689 S.W.2d 196, 201 (Tenn. Crim. App. 1984) (circumstances of the offense met heightened standard where the defendant, a county official, embezzled $50,818.48 in a "continuing scheme executed over the course of an extended period of time."); State v. Cary M. Dotson, No. E2008-02516-CCA-R3-CD, 2009 WL 3191705 (Tenn. Crim. App. Oct. 6, 2009) perm. app. denied (Tenn. April 14, 2010) (circumstances of the offense met heightened standard where the evidence showed that the defendant stole at least $227,610 from his employer over the course of three and a half years); State v. Chanda Dawn Langston, No. M2009-02247-CCA-R3-CD, 2010 WL 3822829 (Tenn. Crim. App. Sept. 30, 2010) (circumstances of the offense met heightened standard where evidence showed that the Defendant forged 149 company checks over the course of four years causing a total loss of $233,285.79 to her employer.); State v. Rhonda Brown-Montague aka Rhonda Brown, No. W2011-01433-CCA-R3-CD, 2012 WL 6030512 (Tenn. Crim. App. Dec. 5, 2012) perm. app. denied (Tenn. April 10, 2013) (circumstances of the offense met heightened standard where evidence showed that the defendant stole at least $80,000 from her

---

[2] This court has questioned the continued viability of the heightened standard of review where the trial court denies probation based solely on the need to avoid depreciating the seriousness of the offense in light of Bise and Caudle. See State v. Micah Alexander Cates, No. E2014-01322-CCA-R3-CD, 2015 WL 5679825, at *12 (Tenn. Crim. App. Sept. 28, 2015); State v. Tan Vo, No. W2013-02118-CCA-R3-CD, 2014 WL 4415296, at *7 (Tenn. Crim. App. Sept. 9, 2014); State v. Edward Shannon Polen, No. M2012-01811-CCA-R3-CD, 2014 WL 1354943, at *6 (Tenn. Crim. App. May 3, 2013) perm. app. denied (Tenn. Aug. 29, 2014); State v. William Roger Henderson, III, No. M2013-00603-CCA-R3-CD, 2013 WL 6706200, at *3 (Tenn. Crim. App. Dec. 18, 2013); State v. Delavin Benjamin Mohammed, No. M2011-02552-CCA-R3-CD, 2013 WL 1874789, at *6 (Tenn. Crim. App. May 3, 2013) perm. app. denied (Tenn. Oct. 16, 2013). However, in State v. Kyto Sihapanya, the Tennessee Supreme Court seemingly indicated that the heightened standard of review is still available "in cases where the trial court denies probation on only" the seriousness of the offense. No. W2012-00716-SC-R11-CD, 2014 WL 2466054, at *3 (Tenn. Apr. 30, 2014).

employer, a non-profit organization dedicated to providing financial assistance to disabled individuals, over the course of three years through a "systematic and complex" scheme involving the creation of fictitious individuals and forging of documents.).

We can only conclude that the circumstances of this case simply do not rise to the level of violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree sufficient to support a denial of probation on that basis alone. While significant, the value of the ring in this case, $1,300, was substantially lower than the amounts involved in the previously cited cases. Additionally, all evidence indicates that this theft was a one-time occurrence, and not the result of months or years of embezzling or stealing. Finally, because the ring was recovered and returned to the victim, there was no actual financial loss in this case. All of these factors readily distinguish the case at bar from the theft cases previously cited, where the denial of probation was justified based on the circumstances of the offense alone.

Finally, the other considerations weigh strongly in favor of a grant of probation. The Defendant-Appellant's criminal history consists only of one charge of passing a worthless check, which was dismissed upon payment of costs. There is no evidence that measures less restrictive than confinement have been unsuccessfully applied to her, and there is no evidence of a history drug or alcohol abuse or a need for treatment. Under these circumstances, the nature of the offense does not outweigh the multitude of factors favoring a probationary sentence. See Travis, 622 S.W.2d at 534. Based on our review, there is no substantial evidence in the record which would support the denial of probation.

## CONCLUSION

Based on the foregoing authority and analysis, we reverse the judgment of the trial court and remand for entry of a judgment ordering the Defendant-Appellant to serve her three-year sentence on supervised probation.

_____
CAMILLE R. McMULLEN, JUDGE