FILED
05/27/2022
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 13, 2022 Session

## STATE OF TENNESSEE v. VINCENT EDWARD CROWSON, JR.

**Appeal from the Circuit Court for Rutherford County**
**No. 79939      David M. Bragg, Judge**

_____

### No. M2021-00321-CCA-R3-CD

_____

Following a bench trial, the trial court found the defendant, Vincent Edward Crowson, Jr., guilty of driving under the influence (count 1), driving while his license was suspended because of a conviction for driving under the influence (count 2), possession of a weapon while under the influence of a controlled substance (count 4), being a convicted felon in possession of a firearm (count 5), driving while his license was suspended because of a conviction for driving under the influence, second offense (count 6), and driving under the influence, second offense (count 7). The trial court imposed an effective twenty-year sentence, and the defendant appealed. On appeal, the defendant challenges the sufficiency of the evidence supporting his convictions, the constitutionality of the felon in possession of a firearm statute, and several pre-trial rulings of the trial court. After reviewing the record and considering the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JILL BARTEE AYERS and JOHN W. CAMPBELL, SR., JJ., joined.

Drew Justice, Murfreesboro, Tennessee, for the appellant, Vincent Edward Crowson, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Jennings H. Jones, District Attorney General; and Brent Pierce, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

On February 18, 2018, Tennessee Highway Patrol Trooper Chris Langley initiated a traffic stop of the defendant in Rutherford County, Tennessee. Prior to the stop, Trooper Langley saw the defendant cross over the fog line on Interstate 24. The defendant was driving a red Chevrolet Silverado which matched the description of a stolen vehicle provided in an active "be-on-the-lookout" ("BOLO"). Trooper Langley followed behind the defendant for several miles, activated his dashcam video, confirmed the defendant was driving a stolen vehicle, and initiated a traffic stop. During the stop, Trooper Langley located a pistol on the defendant's person and needles in the vehicle. The defendant also admitted to using heroin when he passed Trooper Langley on the interstate.

A Rutherford County grand jury indicted the defendant for driving under the influence (count 1), driving while his license was suspended because of a conviction for driving under the influence (count 2), possession of drug paraphernalia (count 3), possession of a weapon while under the influence of a controlled substance (count 4), being a convicted felon in possession of a firearm (count 5), driving while his license was suspended because of a conviction for driving under the influence, second offense (count 6), and driving under the influence, second offense (count 7). Tenn. Code Ann. §§ 39-17-425, -1307, -1321; 55-10-401, -50-504. The defendant filed several pre-trial motions, each of which the trial court addressed during a hearing on March 17, 2020.

a. *Ferguson* Motion

In support of his *Ferguson*[1] motion, the defendant argued his case should be dismissed because "all of the relevant dashboard video – critical evidence to the case – has been deleted." The defendant asserted the video was deleted "either with extreme negligence or with outright intent" and "there is no other evidence of DUI apart from the incident that occurred on video." At the hearing, the defendant presented testimony from Trooper Langley who described the events leading up the traffic stop of the defendant.

While "sitting in the median" on Interstate 24, Trooper Langley saw the defendant drive past him in the left lane "doing 70." The defendant crossed the fog line, and Trooper Langley began following the defendant in order "to watch his driving behavior." As a result, Trooper Langley's dashboard camera was activated.

In addition to the defendant's driving behavior, Trooper Langley noted the red Chevrolet Silverado driven by the defendant matched a stolen vehicle described in an active BOLO. Trooper Langley called dispatch to confirm that the vehicle driven by the defendant was the stolen vehicle identified in the BOLO. During the dispatch call, Trooper Langley asked if the stolen vehicle's license plate contained a "7." The dispatch operator

---

[1] *State v. Ferguson*, 2 S.W.3d 912, 915 (Tenn. 1999).

stated that it did not but verified the license plate of the vehicle driven by the defendant as the stolen vehicle identified in the BOLO. Trooper Langley continued following the defendant for several miles. After the defendant exited the interstate and pulled into a gas station, Trooper Langley initiated the traffic stop.

According to Trooper Langley, the dashcam video captured his pursuit of the defendant and the traffic stop. The portion of the dashcam video that captured the traffic stop was successfully pulled from the server. However, the portion of the video that captured the pursuit had not yet been successfully pulled from the server. The dashcam video of the traffic stop was entered into evidence along with an audio recording of Trooper Langley's dispatch call. The defendant also submitted an audio recording of Trooper Langley's testimony from the defendant's preliminary hearing.

The State presented testimony from Kevin Kennett, the Administrative Sergeant for the Nashville District of the Tennessee Highway Patrol. In that role, Mr. Kennett fulfilled requests for video footage from the L-3 server system used by the department at the time of the defendant's traffic stop. Mr. Kennett explained video footage is saved first on the county server before being saved on the agency server for 90 days, "depending on what categorized issue it is." If an officer logs a video as an "arrest" or a "significant event," the video will be saved on the agency server before being downloaded to a disk. In this case, Trooper Langley categorized the video at issue as an "arrest," thus ensuring it would be saved to the agency server and not deleted after 90 days.

Mr. Kennett reviewed three screenshots from his computer showing his attempt to locate the dashcam video at issue. The screenshots were entered into evidence and showed that the dashcam video was categorized as an "arrest" and was "broken up into three different sections" based upon the size of the media file. The video file related to the traffic stop of the defendant was successfully saved. However, the two video files which captured Trooper Langley's pursuit of the defendant were corrupted. Mr. Kennett confirmed the corrupted video files were saved as a "significant event" and were not deleted; however, they failed to successfully download from the L-3 server. Mr. Kennett explained that he had seen this file corruption happen before and that it was not out of the ordinary. And, although he did not personally take any steps to resolve the corruption issue, the Tennessee Highway Patrol recently changed from the L-3 server system to a new cloud system.

b. *Motion to Suppress*

The defendant also filed a motion to suppress the evidence obtained during the traffic stop, including the pistol and needles found during the search of the vehicle and the statements he made to Trooper Langley regarding his drug use. In support of his motion,

the defendant argued he was unlawfully seized and was not properly *Mirandized* during the stop. During the hearing, the State asked the trial court to incorporate by reference Trooper Langley's *Ferguson*-hearing testimony along with the hearing exhibits. The defendant also testified in support of his motion.

The defendant admitted to driving the red Chevrolet Silverado on February 18, 2018. While driving on Interstate 24, the defendant saw Trooper Langley parked in the median. At the time, the defendant was not under the influence and was driving in the right-hand lane. The defendant did not recall crossing over the fog line. According to the defendant, Trooper Langley would not have been able to see his license plate at the intersection of Interstate 840 and Interstate 24 but believed Trooper Langley would have been able to see the license plate as he exited Interstate 840 onto Murfreesboro Road, noting Trooper Langley was "a couple of car lengths behind" him at that point. During cross-examination, however, the defendant admitted that he did not know what Trooper Langley saw while following behind him on the interstate. The defendant also testified that he was not *Mirandized* at the scene.

The defendant admitted to being convicted of one count of vandalism in Cheatham County and several counts of aggravated burglary in Davidson County. The defendant explained he went on a "crime spree" in Davidson County. Thus, the aggravated burglary convictions were the result of "one occasion, one arrest." The defendant denied being convicted of any felonies in Georgia, providing instead that he was "bound over and made bond" in Georgia and was unaware of any pending charges in that state. The defendant admitted to a pending theft charge in Cheatham County related to the stolen vehicle involved in this case.

c. *Motion to Dismiss the Gun Charges*

In his final pre-trial motion, the defendant moved to dismiss the felon in possession charge of count 5. The defendant argued Tennessee Code Annotated section 39-17-1307 was unconstitutional because it "violates his right to bear, and especially to 'keep,' firearms." The defendant asserted "[b]ecause the statute at hand violates the right to keep and bear arms, and because the General Assembly lacked any legal authority to pass this gun ban, the illegal gun charge in each case should be dismissed." This motion was supported by the arguments of defense counsel. At the conclusion of the hearing, the trial court denied each of the defendant's motions.

d. *Bench Trial*

The defendant subsequently waived his right to a trial by jury, electing instead to have a bench trial under the agreement that if convicted, an effective twenty-year sentence would be imposed and the remaining charges pending against the defendant in a separate case would be dismissed.[2]  The State proceeded with its case-in-chief which consisted of testimony from Trooper Langley regarding his arrest of the defendant.

While parked in the median near Exit 70 on Interstate 24, Trooper Langley observed the defendant driving a red truck and "straddling the fog line in the gravel."  Approximately two hours prior to encountering the defendant, authorities issued a BOLO for a stolen, red 2003 Chevrolet Silverado truck and trailer.  The vehicle driven by the defendant matched the description of the vehicle identified in the BOLO though there was no trailer attached.  The license plate of the vehicle driven by the defendant also matched the license plate of the stolen vehicle provided in the BOLO.

Trooper Langley followed the defendant and initiated a traffic stop of the defendant and his two passengers.  After another officer arrived to assist Trooper Langley, the officers ordered the defendant and passengers to put their hands in front of them.  The defendant "was moving really slow[ly]," so the officers removed the defendant and passengers from the vehicle.  The assisting officer asked the defendant if he had "anything [] on him," and the defendant replied that he did not.  However, during a pat down search, the officers located "a pistol on [the defendant's] right side."  The Ruger .380 pistol located on the defendant during the search was entered into evidence.  The officers placed the defendant in the assisting officer's patrol vehicle and the passengers in Trooper Langley's patrol vehicle.  Trooper Langley verified the VIN on the stolen vehicle and searched it.  During the search, Trooper Langley located "a needle in a purse" and "needles in a jacket."

Trooper Langley asked the defendant about his drug use, and the defendant admitted to using heroin.  According to Trooper Langley, the defendant further stated that the last time he had used heroin was "[a]s he was passing [Trooper Langley].  That's why he was on the fog line."  Trooper Langley stated he recovered the needle the defendant used to inject himself while driving and noted the defendant appeared impaired.  Trooper Langley explained:

> After every sentence -- after speaking with him, he could barely hold his eyes open.  He would stop talking.  Once we placed him in the vehicle, we had to constantly check on him, because he would be out -- out cold.  We would have to physically touch him to get him to wake up.

---

[2] At the time, the defendant had charges pending against him in Case No. 79709.

Trooper Langley researched the defendant's driving history and discovered his license was not valid due to a prior DUI and either "financial responsibility or a prior unpaid ticket." An official copy of the defendant's driving record was entered into evidence along with the case file for the defendant's arrest which included documents establishing the BOLO. Certified copies of the defendant's prior convictions were also entered into evidence.

During cross-examination, Trooper Langley stated the defendant only crossed the fog line once. He followed the defendant for approximately eight miles, and "[i]t seemed like [the defendant] was trying to avoid [him]." He initially began following the defendant "because of the fog line." But "[o]nce I got behind him, the tag matched the BOLO from earlier," and he initiated the traffic stop as a result. During the stop, the defendant told Trooper Langley that he used heroin intravenously but did not identify where on his body he injected himself, only that "he was doing it while he was driving, that's why he was over the line." Trooper Langley agreed the defendant was overweight and it might be difficult to inject drugs while driving, depending upon one's experience level. Trooper Langley did not perform any field sobriety tests on the defendant.

Regarding the three needles located during the search, Trooper Langley stated that the needle found in the purse had drug residue on it and that he did not find any needles on the defendant's person. Though the defendant agreed to a blood draw, Trooper Langley stated they were "unable to get any blood from him, period." Trooper Langley agreed it could take approximately ten minutes for heroin injected into a vein to take effect and stated a pistol like the one found on the defendant could be useful to a civilian to defend against foreign invasion. The State did not offer any additional proof.

The defendant and his grandfather, Wade Crowson, testified on behalf of the defense.[3] Mr. Crowson testified he is the owner of the truck and pistol at issue. Prior to the defendant's arrest, Mr. Crowson let the defendant borrow his truck "[m]ultiple times." On the morning of February 18, 2018, Mr. Crowson walked outside and saw that his truck "was gone." Because he did not know who took his truck, he reported the vehicle as stolen. However, if he had known the defendant had taken his truck, Mr. Crowson would not have contacted the police and, instead, would have contacted the defendant. Mr. Crowson stored the pistol in the center console of the truck.

The defendant explained he borrowed Mr. Crowson's truck after his vehicle overheated while driving on the interstate in the early morning hours of February 18, 2018. When the defendant arrived at Mr. Crowson's home, Mr. Crowson was asleep, so the

---

[3] The defendant also offered a certified judgment showing that the pending Cheatham County theft charge was dismissed.

defendant located the spare key to the truck without waking Mr. Crowson. The defendant then retrieved his vehicle off the interstate using the trailer attached to Mr. Crowson's truck and towed his vehicle back to Murfreesboro, arriving around 3:30 or 4:00 a.m. While in Murfreesboro, two of his roommates asked for a ride, and the defendant agreed. The roommates, who the defendant described as "heavy heroin users," were the passengers in the truck when the defendant was arrested. The defendant admitted to a history of drug use but testified he had never used heroin. The defendant stated he did not know there was a pistol in Mr. Crowson's truck when he took it. He found the pistol after arriving in Murfreesboro. The defendant worried his passengers might steal the pistol and explained, "when I found the gun, I put it on my person . . . [b]ecause I didn't want nothing (sic) to happen to it." According to the defendant, he "planned on giving the truck and everything back to [Mr. Crowson] later that day." The defendant testified that he disconnected the trailer from Mr. Crowson's truck, but ultimately, he did not know what happened to the trailer.

During cross-examination, the defendant admitted to driving Mr. Crowson's truck on February 18, 2018, and that the truck had been reported stolen. The defendant denied telling Trooper Langley that he was using heroin that day, stating Trooper Langley lied during his testimony. The defendant admitted to prior DUI arrests and several aggravated burglary convictions. He admitted to past drug use but denied using heroin. The defendant also denied using drugs on the day of his arrest or being high at the time of the traffic stop. The defendant did not recall the last time he had used drugs.

At the conclusion of the proof, the trial court found the defendant guilty of driving under the influence (count 1), driving while his license was suspended because of a conviction for driving under the influence (count 2), possession of a weapon while under the influence of a controlled substance (count 4), being a convicted felon in possession of a firearm (count 5), driving while his license was suspended because of a conviction for driving under the influence, second offense (count 6), and driving under the influence, second offense (count 7). Tenn. Code Ann. §§ 39-17-1307, -1321; 55-10-401, -50-504. The trial court found the defendant not guilty of possession of drug paraphernalia (count 3). Tenn. Code Ann. § 39-17-425. Based upon the agreement of the parties, the trial court imposed an effective twenty-year sentence to be served in the Tennessee Department of Correction. The defendant filed a motion for a new trial which the trial court denied. This timely appeal followed.

***Analysis***

I. *Ferguson Motion*

The defendant asserts the trial court erred in denying his *Ferguson* motion because "[t]he undisputed proof showed that the Tennessee Highway Patrol not only lost the dashboard video in this case, but also that such technical failures were a recurring problem about which the government did nothing." The defendant also suggests "the lost video would have been relevant and exculpatory not only to showing [the defendant's] innocence of DUI, but also to showing that his vehicle was unlawfully stopped in the first place." The State asserts the trial court did not err "because the absence of a portion of Trooper Langley's video did not render his trial fundamentally unfair," and "[w]hile the video was the only evidence of the defendant driving, it was not the only evidence of his guilt." Upon our review, we agree with the State.

Every criminal defendant is afforded the right to a fair trial by both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution. U.S. CONST. amend 14; Tenn. Const. art. I, § 8. "To facilitate this right, a defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to guilt or relevant to punishment." *State v. Ferguson*, 2 S.W.3d 912, 915 (Tenn. 1999) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about a defendant's guilt." *Id.* (citing *United States v. Agurs*, 427 U.S. 97, 110-11 (1976)0.

The *Ferguson* court adopted a balancing approach to determine whether the loss or destruction of potentially exculpatory evidence renders a defendant's trial fundamentally unfair. 2 S.W.3d at 917. "The first step in this analysis is to determine whether the State had a duty to preserve the evidence." *Id.* "Generally speaking, the State has a duty to preserve all evidence subject to discovery and inspection under Tenn[essee] R[ules] [of] Crim[inal] P[rocedure] 16, or other applicable law." *Id.* However,

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Id.* (quoting *California v. Trombetta*, 467 U.S. 479, 488 (1984)). Therefore, "[i]f the proof demonstrates the existence of a duty to preserve and further shows that the State has failed in that duty, the analysis moves to a consideration of several factors which should guide the decision regarding the consequences of the breach." *Id.* The applicable factors include:

- 8 -

"1) The degree of negligence involved; 2) The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and 3) The sufficiency of the other evidence used at trial to support the conviction." *Id.*

"If, after considering all the factors, the trial judge concludes that a trial without the missing evidence would not be fundamentally fair, then the trial court may dismiss the charges. Dismissal is, however, but one of the trial judge's options." *Id.* "[T]he standard of review of a trial court's determination as to whether a defendant was deprived of a fundamentally fair trial is *de novo* with no presumption of correctness." *State v. Merriman*, 410 S.W.3d 779, 797 (Tenn. 2013). "Deference should be given to the trial court's findings of fact, however, unless the evidence preponderates otherwise." *Id.* Thus, "[a] trial court's determination of the appropriate remedy for the State's failure to preserve the evidence is reviewed under an abuse of discretion standard." *Id.*

The first step of the *Ferguson* analysis requires this Court to determine whether the State had a duty to preserve the dashcam video. *Ferguson*, 2 S.W.3d at 917. While it is clear the State had a duty to preserve the video footage, the record indicates that it did. According to Trooper Langley, his dashcam video was activated when he began following behind the defendant on Interstate 24 and continued throughout the traffic stop. Trooper Langley properly categorized the dashcam video as an "arrest" which, according to Mr. Kennett, ensured the video would be downloaded and saved on the L-3 server. The video was saved in three separate files. During the download, two of the files were corrupted and one file downloaded successfully.

Based upon these facts, we conclude the State had a duty to preserve the dashcam video and took the necessary steps to do so. Unfortunately, due to reasons beyond the State's control, portions of the dashcam video were corrupted and unavailable at trial. The defendant, however, has failed to show that the State failed in its duty to preserve the video, to demonstrate negligence on behalf of the State, or to adequately explain the significance of the lost dashcam video in light of Trooper Langley's testimony regarding the defendant's behavior during the traffic stop and the defendant's admission he was driving the vehicle. *Ferguson*, 2 S.W.3d at 917. As a result, we need not consider what consequences would be appropriate for the loss of a portion of the dashcam video and conclude the trial court did not err in denying the *Ferguson* motion. The defendant is not entitled to relief.

## II.     *Motion to Suppress*

The defendant argues his "alleged admission should have been suppressed" because "[t]he proof was clear that [the defendant] had already been arrested and placed in a police

car when Trooper [] Langley searched his car." The defendant asserts that during the search, Trooper Langley found needles "about which he questioned [the defendant]" and that "it was only in response to the questioning that the admission was allegedly made." Further, the defendant argues it was "undisputed that no *Miranda* warnings were given." The State asserts the trial court properly "denied the motion because the defendant was not 'in custody' for the purposes of *Miranda* when he made his statement." Upon our review, we agree with the State.

Suppression issues on appeal are subject to a well-established standard of review. Appellate courts are bound by a trial court's findings of facts determined after a suppression hearing unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Matthew T. McGee*, No. E2011-01756-CCA-R3-CD, 2012 WL 4017776, at *2 (Tenn. Crim. App. Sept. 13, 2012). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Appellate courts should consider the entire record, affording the prevailing party "the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence." *Matthew T. McGee*, 2012 WL 4017776, at *2 (citing *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001)); *see also State v. Sanders*, 452 S.W.3d 300, 306 (Tenn. 2014). However, applying the law to the factual findings of the trial court is a question of law, which is reviewed *de novo* on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fifth Amendment to the United States Constitution, applicable to states through the Fourteenth Amendment, states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. Amend. V. Similarly, the Tennessee Constitution states "that in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. If a suspect is in police custody "or otherwise [has been] deprived of his freedom of action in any significant way," the police must first inform him of his Fifth Amendment rights for any subsequent confession to later be admissible as substantive evidence. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). In this regard, the United States Supreme Court has said, "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* These rights may be voluntarily, knowingly, and intelligently waived. *Id.*

The *Miranda* decision only applies "to the questioning of an individual who has been taken into custody or otherwise deprived of his freedom by the authorities in a significant way." *State v. Dailey*, 273 S.W.3d 94, 102 (Tenn. 2009) (quoting *Miranda*, 384 U.S. at 478) (internal quotation marks omitted). Accordingly, *Miranda* warnings are only

required when a suspect is (1) in custody and (2) subjected to questioning or its functional equivalent. *State v. Walton*, 41 S.W.3d 75, 83 (Tenn. 2001). In the absence of either, *Miranda* requirements are not necessitated. *Id.*

The test for determining if an individual is in custody for *Miranda* purposes is "whether, under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest." *State v. Anderson*, 937 S.W.2d 851, 855 (Tenn. 1996). This is a fact-specific inquiry, and our supreme court has provided the following non-exhaustive list of relevant factors:

> [T]he time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt, and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

*Id.* The defendant bears the initial burden of proving custody for the purposes of *Miranda* before the burden shifts to the State to prove the voluntariness of the statement. *State v. Moran*, 621 S.W.3d 249, 258 (Tenn. Crim. App. 2020), *appeal denied* (Mar. 23, 2021).

Here, the defendant has failed to meet his burden of proving custody for the purposes of *Miranda* concerning the statement he made to Trooper Langley about using heroin while driving on the interstate.[4] The defense's proof at the suppression hearing was brief and included only the defendant's testimony wherein he admitted to driving the stolen vehicle and being stopped by Trooper Langley, denied being under the influence, and stated he was not *Mirandized* during the traffic stop. The defendant failed to provide any additional evidence to support his contention that he was in custody at the time he made the statement about his heroin use. As such, the defendant clearly did not meet his burden of proving he was in custody at the time he made the statement.

---

[4] We note, the defendant's argument during the suppression hearing focused on the constitutionality of the traffic stop rather than the *Miranda* issue argued on appeal.

Regardless, upon our review of the record as a whole, it is clear the defendant was not in custody when he made the statement to Trooper Langley. During trial, Trooper Langley testified that he saw the defendant cross the fog line while driving on Interstate 24. The vehicle driven by the defendant matched the description of a stolen vehicle identified in an active BOLO. Trooper Langley followed the defendant, confirmed the vehicle was stolen, and initiated a traffic stop. During the stop, the defendant appeared impaired, "was moving really slow[ly]," "could barely hold his eyes open," and had to be "constantly check[ed] on." Trooper Langley removed the defendant from the stolen vehicle, performed a pat down search, and located a Ruger .380 pistol on the defendant's person. After finding the pistol, Trooper Langley placed the defendant in the assisting officer's patrol vehicle, searched the stolen vehicle, and found three needles. Trooper Langley asked the defendant about his drug use, and the defendant admitted to using heroin. Specifically, the defendant stated that the last time he had used heroin was "[a]s he was passing [Trooper Langley]. That's why he was on the fog line."

Thus, the record indicates that after finding a pistol on the impaired defendant, Trooper Langley placed the defendant in a patrol car for safety purposes. During a search of the stolen vehicle, Trooper Langley found needles and asked the defendant about his drug use, presumably to ensure both his safety and the safety of the public. Courts have repeatedly held that an officer may handcuff a suspect or place him in a police car for safety purposes, and that "[a]n officer may ask questions that are necessary to ensure the officer's safety or that of the public without violating the *Miranda* rights of a person in custody." *See United States v. Wright*, 220 Fed. Appx. 417, 420 (6th Cir. 2007) (noting that merely placing a suspect in the back of a police car does not constitute custody for the purposes of *Miranda*); *State v. Dyron Norm Yokley*, No. E2009-02646-CCA-R3-CD, 2011 WL 2120096, at *23 (Tenn. Crim. App. May 20, 2011), *perm. app. denied* (Tenn. Sept. 21, 2011) (citing *New York v. Quarles*, 467 U.S. 649, 657 (1984)). As such, the record indicates the defendant was not in custody for purposes of *Miranda*, and the defendant has provided no proof to show otherwise. The defendant is not entitled to relief.

III.    *Sufficiency of the Evidence*

The defendant challenges the sufficiency of the evidence supporting his convictions for driving under the influence, possession of a weapon while under the influence of a controlled substance, and being a felon in possession of a firearm.[5] The State asserts sufficient evidence exists to support each of the challenged convictions, and we agree.

---

[5] The defendant does not specifically challenge his remaining convictions, and, as a result, we will not address the sufficiency of the evidence supporting the same.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-91 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are

consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). "[T]his court has stated that 'it is logical and compelling that the judge's role at a bench trial be considered the same as the jurors' role at a jury trial. Each, when so sitting, is acting as the trier of facts." *State v. Toscar C. Carpenter, Sr.*, No. M2000-00990-CCA-R3-CD, 2000 WL 1880612, at *2 (Tenn. Crim. App. Dec. 29, 2000) (quoting *State v. Daniels*, 531 S.W.2d 795, 801 (Tenn. Crim. App. 1975)). "Accordingly, in a bench trial, the trial judge, as the trier of fact, must resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *Id.* (citing *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Dorantes*, 331 S.W.3d at 379.

> *a. Driving Under the Influence and Possession of a Weapon while under the Influence of a Controlled Substance*

The defendant was convicted of DUI pursuant to Tennessee Code Annotated section 55-10-401, which provides, in pertinent part:

> It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or apartment house complex, or any other premises that is generally frequented by the public at large, while:

> (1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system, or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess.

Tenn. Code Ann. § 55-10-401. The defendant was also convicted of possession of a weapon while under the influence of a controlled substance. Tennessee Code Annotated section 39-17-1321 makes "it is an offense for a person to possess a handgun while under the influence of alcohol or any controlled substance or controlled substance analogue." Tenn. Code Ann. § 39-17-1321(a). Heroin is a controlled substance. Tenn. Code Ann. § 39-17-406(c)(11).

Here, it is undisputed the defendant was driving an automobile on a public highway in the State of Tennessee on February 18, 2018. The defendant admitted that he used heroin and that he did so as he passed Trooper Langley and crossed over the fog line on Interstate 24. During the traffic stop, Trooper Langley found three needles, one of which had drug residue on it, in the stolen vehicle and a Ruger .380 pistol on the defendant's person. The record also indicates the defendant showed multiple verbal and physical signs of impairment during the stop. Trooper Langley testified that he believed the defendant was impaired because he "was moving really slow[ly]," "could barely hold his eyes open," "would stop talking," had to be "constantly check[ed] on . . . because he would be . . . out cold," and had to be physically touched in order to wake. "This court has previously held that sufficient evidence existed for a DUI conviction when the trial court only relied on the arresting officer's testimony that the defendant was driving under the influence." *State v. Stephen A. Simpson*, No. E2020-01340-CCA-R3-CD, 2021 WL 3477537, at *5 (Tenn. Crim. App. Aug. 9, 2021), *appeal denied* (Dec. 8, 2021) (citing *State v. Vasser*, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993)).

From these facts, a rational trier of fact could have found the defendant guilty of DUI and possession of a weapon while under the influence of a controlled substance. While the defendant denied using heroin, both generally and while driving on the interstate, and argues "there was little or no evidence of intoxication," the trial court, as the trier of fact, is entrusted with determining the weight of the evidence and evaluating the credibility of witnesses. *Toscar C. Carpenter, Sr.*, 2000 WL 1880612, at *2. Based upon the verdict, the trial court weighed the testimony of Trooper Langley and the defendant and reconciled the evidence in favor of the State. *Campbell*, 245 S.W.3d at 335; *Dorantes*, 331 S.W.3d at 379. This Court will not reweigh the evidence. *Dorantes*, 331 S.W.3d at 379. Accordingly, we conclude the evidence was sufficient to support the defendant's convictions.

### b. Felon in Possession

As charged in this case, unlawful possession of a firearm by a convicted felon occurs when any person who has been convicted of a felony involving the use of or attempted use of force, violence, or a deadly weapon subsequently unlawfully possesses a firearm. Tenn. Code Ann. § 39-17-1307(b)(1)(A). The defendant's conviction for being a felon in possession of a firearm is based on a prior felony conviction for aggravated burglary. Aggravated burglary is a "crime of violence." Tenn. Code Ann. § 39-17-1301(3). Possession may be actual, constructive, or joint. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *Key v. State*, 563 S.W.2d 184, 188 (Tenn. 1978). *see also State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000).

Here, the State introduced a certified copy of the defendant's prior felony conviction for aggravated burglary, and the defendant admitted to the same. Trooper Langley searched the defendant during the traffic stop and found a Ruger .380 pistol on the defendant's person. During trial, the defendant admitted to possessing the pistol. Considering this testimony in the light most favorable to the State, there was ample evidence presented at trial to show the defendant possessed the firearm after having previously been convicted of a felony crime of violence.

The defendant, however, argues the evidence is insufficient because he successfully raised the defense of necessity at trial. We disagree. Regarding the defense of necessity, Tennessee Code Annotated section 39-11-609 provides unlawful "conduct is justified if: (1) [t]he person reasonably believes the conduct is immediately necessary to avoid imminent harm; and (2) [t]he desirability and urgency of avoiding the harm clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness." Tenn. Code Ann. § 39-11-609; *see* T.P.I. - Crim. 40.05 (19th ed. 2015). The defense of necessity "excuses criminal liability in those exceedingly rare situations where criminal activity is an objectively reasonable response to an extreme situation." Tenn. Code Ann. § 39-11-609, Advisory Comm'n Cmts. Therefore, the defense is applicable in situations "(1) where the defendant acts upon a reasonable belief that the action is necessary to avoid harm; and (2) where the harm sought to be avoided is clearly greater than the harm caused by the criminal act." *Id.* This Court has previously explained, "necessity requires an immediately necessary action, justifiable because of an imminent threat, where the action is the only means to avoid the harm." *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (providing that "[e]xamples of necessity include a ship violating an embargo law to avoid a storm, a pharmacist providing medication without a prescription to alleviate someone's suffering during an emergency, or where two sailors are shipwrecked and one pushes the other off the float to save his own life") (internal citations omitted). "Thus, the statute involves balancing the harm caused by the criminal offense and the harm sought to be avoided." *State v. Cole-Pugh*, 588 S.W.3d 254, 261 (Tenn. 2019) (citing W. Mark Ward, *Tenn. Crim. Trial Practice* § 23:16 (Oct. 2018 update)).

The defense of necessity should be charged if supported by the facts produced at trial; however, because it is not an affirmative defense, "the defendant need not prove [necessity] by a preponderance of the evidence." *Davenport*, 973 S.W.2d at 287 (citing *State v. Culp*, 900 S.W.2d 707, 710 (Tenn. Crim. App. 1994)). Instead, if the evidence "fairly raises" the defense, the trial court "must submit the defense to the jury and the prosecution must 'prove beyond a reasonable doubt that the defense does not apply.'" *Culp*, 900 S.W.2d at 710 (Tenn. Crim. App. 1994) (quoting *State v. Hood,* 868 S.W.2d 744 (Tenn. Crim. App. 1993)).

Here, the defendant asserts the defense of necessity was fairly raised by the evidence produced at trial, arguing he "picked up the handgun and possessed it out of necessity to prevent a greater harm." The defendant, however, failed to demonstrate that a greater harm existed at the time he "picked up the handgun." Instead, the evidence produced at trial shows the defendant took Mr. Crowson's truck in the early morning hours of February 18, 2018, located a pistol in the center console of the truck, and placed the pistol on his person. Though the defendant testified he did not want his passengers to steal the pistol, the defendant failed to provide evidence showing either passenger attempted to do so or even knew the pistol was in the vehicle. As such, the defendant has failed to show how removing the pistol from the console and wearing it on his person was "immediately necessary to avoid imminent harm." Tenn. Code Ann. § 39-11-609. Further, the defendant has failed to show that the desirability and urgency of avoiding the potential theft of the pistol outweighed the harm sought to be prevented by the felon in possession statute. *Id.* The defendant is not entitled to relief.

As noted, the defendant's conviction resulted from a bench trial. We presume the trial court, acting as the trier of fact, considered all of the law applicable to the defendant's case, including any available defenses fairly raised by the facts, in reaching its verdict. *See State v. Myers*, 581 S.W.3d 173, 182-83 (Tenn. 2019) (citing *State v. Daniels*, 531 S.W.2d 795, 801 (Tenn. Crim. App. 1975) ("To us, it is logical and compelling that the judge's role at a bench trial be considered the same as the jurors' role at a jury trial. Each, when so sitting, is acting as the trier of the facts.")). Again, the defendant is not entitled to relief.

IV. *Constitutional Challenge to Tennessee Code Annotated section 39-17-1307(b)*

The defendant challenges the constitutionality of Tennessee Code Annotated section 39-17-1307(b) which makes it a crime for a person to unlawfully possess a firearm after having been convicted of a felony crime of violence. Tenn. Code Ann. § 39-17-1307(b)(1)(A). "Issues of constitutional interpretation are questions of law, which we review *de novo* without any presumption of correctness given to the legal conclusions of the courts below." *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009) (citing *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008)). This Court is "charged with upholding the constitutionality of statutes where possible." *State v. Pickett*, 211 S.W.3d 696, 700 (Tenn. 2007). "In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional." *Id.* (quoting *Gallaher v. Elam*, 104 S.W.3d 455, 459 (Tenn. 2003)). In doing so, "[w]e must 'indulge every presumption and resolve every doubt in favor of the statute's constitutionality.'" *Gallaher*, 104 S.W.3d at 459 (quoting *State v. Taylor,* 70 S.W.3d 717, 721 (Tenn. 2002)). "This presumption applies with even greater force when the facial constitutional validity of a statute is challenged." *Id.* (internal citation omitted).

However, "[i]t is well-settled in Tennessee that 'courts do not decide constitutional questions unless resolution is absolutely necessary to determining the issues in the case and adjudicating the rights of the parties.'" *Waters*, 291 S.W.3d 882 (quoting *State v. Taylor*, 70 S.W.3d 717, 720 (Tenn. 2002)). Furthermore, "a person has no standing to contest the constitutionality of a statutory provision unless the provisions he claims to be deficient has been used to deprive him of his rights." *State v. Purkey*, 689 S.W.2d 196, 201 (Tenn. Crim. App. 1984) (citing *State v. Vanzant*, 659 S.W.2d 816 (Tenn. Crim. App. 1983); *State v. Pritchett*, 621 S.W.2d 127 (Tenn. 1981)).

Article I, section 26 of the Tennessee Constitution provides "[t]hat the citizens of this State have a right to keep and to bear arms for their common defense; but the Legislature shall have power, by law, to regulate the wearing of arms with a view to prevent crime." Tenn. Const. art. I, § 26. As charged in this case, Tennessee Code Annotated section 39-17-1307(b) provides that "[a] person commits an offense who unlawfully possesses a firearm . . . and . . . [h]as been convicted of a felony crime of violence, an attempt to commit a felony crime of violence, or a felony involving use of a deadly weapon." Tenn. Code Ann. § 39-17-1307(b)(1)(A). Our supreme court has observed that "[t]he plain language of the statute makes clear the legislative intent to prohibit one who has been convicted of a violent felony from possessing a handgun." *State v. Johnson*, 79 S.W.3d 522, 526, 528 (Tenn. 2002) (holding "that the legislature intended that a person who has been convicted of a felony involving the use or attempted use of force, violence, or a deadly weapon cannot possess a handgun, even where his or her citizenship rights have been restored pursuant to Tenn. Code Ann. § 40-29-101, *et seq.*"). Thus, "a person who has been convicted of a violent felony may be charged with a crime when later found to be in possession of a handgun." *Id.* at 526. Regarding this statute, the supreme court has explained further that "Tennessee has 'specific disability statutes,' which 'designate a particular civil disability that occurs upon the conviction and remains in effect throughout the defendant's life unless restored by a specific statutory procedure.'" *Id.* at 527 (quoting *Cole v. Campbell*, 968 S.W.2d 274, 276 (Tenn. 1998)). "Specific disability statutes include the loss of the right to vote, *see* Tenn. Code Ann. § 40-20-112 (1997); the loss of the right to hold public office, *see id.* § 40-20-114; the loss of the right to serve as a fiduciary, *see id.* § 40-20-115; and the loss of the right to possess a handgun, *see id.* § 39-17-1307(b)." *Id.*

Here, the defendant argues the statute is unconstitutional because his right to keep and bear arms is protected by Article I, section 26 of the Tennessee Constitution which "does not empower the legislature to prohibit felons from keeping firearms" but rather "empowers the legislature to regulate only the wearing of firearms." The defendant asserts that "[b]ecause the statute in this case violates the right to keep and bear arms, and because the General Assembly lacked any legal authority to pass the gun ban, the illegal conviction

- 18 -

for gun possession by a felon must be reversed and dismissed." The State asserts that "Tennessee's Constitution does not provide an absolute right to bear arms, and it permits the legislature to pass laws 'with a view to prevent crime.'" We review the defendant's challenge below.

The undisputed facts of this case demonstrate that the defendant was previously convicted of aggravated burglary, a felony crime of violence, and Trooper Langley located a pistol on the defendant's person during the traffic stop. As noted, Article I, section 26 of the Tennessee Constitution provides that "the Legislature shall have power, by law, to regulate the wearing of arms with a view to prevent crime." Tenn. Const. art. I, § 26. Because the defendant was wearing the pistol when he encountered Trooper Langley, the defendant was clearly in possession of the pistol and, thus, directly violated the statute at issue. Furthermore, the defendant concedes that the General Assembly can legislate the "wearing" of arms. Thus, we decline to address the constitutional question raised by the defendant's facial challenge to Tennessee Code Annotated section 39-17-1307(b) as it is clear that the resolution of the defendant's constitutional challenge is not "'absolutely necessary to determining the issues in the case and adjudicating the rights of the parties.'" *Waters*, 291 S.W.3d 882 (quoting *Taylor*, 70 S.W.3d at 720). And, because the defendant was in direct violation of the statute and concedes the legislature can regulate the behavior in which he was engaged, the wearing of a pistol, nothing in the record indicates the defendant has been deprived of his rights. As a result, the defendant has no standing to contest the constitutionality of Tennessee Code Annotated section 39-17-1307(b), and he is not entitled to relief. *Purkey*, 689 S.W.2d at 201.

## Conclusion

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE